Maureen C. VanderMay, WSBA No. 16742
The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELF-MAN, LLC, <br><br> Plaintiff, <br><br> v. <br><br> RYAN LAMBERSON, <br><br> Defendant. | Case No.: 2:13-CV-00395-TOR <br><br> PLAINTIFF'S MOTIONS IN RESPONSE TO DEFENDANT'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT; AND COUNTERCLAIM <br><br> 04/30/2014 <br> Without Oral Argument |

Pursuant to Federal Rule of Civil Procedure 12, Plaintiff Elf-Man, LLC hereby submits the following motions in response to Defendant's Second Amended Answer and Affirmative Defenses to Plaintiff's First Amended Complaint; and Counterclaim (hereinafter "second amended answer") (ECF No. 36):

– Motion to Dismiss Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted;

– Motion to Dismiss Counterclaims and/or Strike Affirmative Defenses Based Upon Allegations of Fraud Pursuant to Fed. R. Civ. P. 9(b);

/ / / /

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 1

– Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) the following redundant, immaterial, impertinent and/or scandalous matter in Defendant's second amended answer as listed:

1) all references to Plaintiff's alleged "speculative invoicing program" and related terms in that they are scandalous and intended for improper purposes, including but not limited to the unfounded claim that Plaintiff is a "commercial profiteer" (ECF No. 36 at ¶¶ 5, 38, 41,42, 54, 60);

2) affirmative defenses set forth in ¶¶ 2, 3, 5, 8, 10, 14, 23, 24, 25,26, 27, 28 (ECF No. 36 pp. 13-15);

3) the narrative set forth in the counterclaims section (ECF No. 36 pp. 16-37, Counterclaim ¶¶ 1-56);

4) Prayer for Relief subsections d), f), g), h), and I) (ECF No. 36 pp. 37-38); and

5) the exhibits to Defendant's second amended answer.

Plaintiff supports these motions with the following points and authorities and the record in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

I    Defendant's Counterclaims Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).

    A.    Dismissal of Defendant's Counterclaims is Required on *Noerr-Pennington* Grounds.

Under what has become known as the *Noerr-Pennington* doctrine, participants in certain forms of petitioning of governmental entities are immune

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 2

from civil liability based on such activities.[1]  Although the doctrine originated in the context of immunity from liability under the federal antitrust laws, *Eastern Railroad Presidents Conference v Noerr Motor Freight, Inc,* 365 U.S. 127 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657 (1965), *Noerr-Pennington* immunity has been extended beyond the antitrust context.  The doctrine's development is described at some length in the Ninth Circuit's decision in *Sosa v. DirecTV, Inc.,* 437 F.3d 923, 929-32 (9th Cir. 2006).  In this discussion, the Court noted as follows:

> "The Noerr-Pennington doctrine derives from the First Amendment's guarantee of 'the right of the people ... to petition the Government for a redress of grievances.' U.S. Const. amend. I. Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability

---

[1]  Because it is intended to protect the petitioning of government for redress, the purposes underlying *Noerr-Pennington* are substantially the same as those underlying Washington's anti-SLAPP statute, RCW 4.24.525.  This Court previously found that Defendant's state law counterclaims were "properly subject to a special motion to strike" under this statute.  ECF No. 35 at p. 7.  Because his remaining counterclaims are based upon Plaintiff's commencement of this and other legal actions and its investigations which gave rise to these actions, Defendant's remaining counterclaims are similarly subject to being dismissed on *Noerr-Pennington* grounds.

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 3

for their petitioning conduct. *Empress LLC v. City & County of S.F.,* 419 F.3d 1052, 1056 (9th Cir. 2005) (*citing Manistee Town Ctr. v. City of Glendale,* 227 F.3d 1090, 1092 (9th Cir. 2000)).

"The *Noerr-Pennington* doctrine arose in the antitrust context and initially reflected the Supreme Court's effort to reconcile the Sherman Act with the First Amendment Petition Clause. . . . Recognizing the constitutional foundation of the doctrine, the Supreme Court has applied *Noerr-Pennington* principles outside the antitrust field."

437 F.3d at 929.

The *Sosa* decision is instructive because it dismisses an action on *Noerr-Pennington* grounds in circumstances substantially analogous to those at issue in the present controversy. *Sosa* concerned a civil action against DirecTV, Inc. for the mailing of tens of thousands of demand letters to persons who it believed had misappropriated its satellite television signal. *Id.* at 925-26. Plaintiffs had initially filed a civil action against DirecTV, Inc. in state court alleging violation of California's unfair business practices statute. *Id.* at 927. After this action was dismissed under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, the plaintiffs commenced a federal civil action against DirecTV, Inc. alleging that its conduct in relation to its demand letters violated the federal Racketeer Influenced and Corrupt Organizations Act. *Id.* The Ninth Circuit affirmed the dismissal of the plaintiffs' claim on *Noerr-Pennington* grounds, concluding that DirecTV, Inc's pre-litigation conduct (and not just its direct petitioning of government) was protected by the doctrine. *Id.* at 942.

Both of Defendant's counterclaims should be dismissed on *Noerr-Pennington* grounds. Although both counts are cast in terms of the federal

Copyright Act, Defendant's second amended answer taken as a whole demonstrates that Defendant seeks to retaliate against Plaintiff for its lawful efforts to vindicate its rights under the Copyright Act by petitioning this Court for redress.  Because the gravamen of both of Defendant's counterclaims stems directly from Plaintiff's initiation and litigation of this action, *Noerr-Pennington* requires dismissal of these claims.  Moreover, under *Sosa,* to the extent that Defendant complains of some unspecified actions or statements made by Plaintiff, these are protected under *Noerr-Pennington* as well.

  B Defendant's Counterclaims Do Not State Claims for Declaratory Relief.

Count 1 is simply the mirror image of Plaintiff's claim for copyright infringement.  Defendant seeks no relief beyond the contours of the justiciable controversy alleged in Plaintiff's First Amended Complaint – Plaintiff has alleged that Defendant infringed its copyright and Defendant seeks a declaration that he has not done so.  ECF No. 36  p. 36 at Counterclaim ¶ 58 ("Mr. Lamberson has not infringed any of plaintiff's exclusive rights in *Elf-Man* and seeks a formal declaration of the same.  Defendant has been accused of three types of infringement, but he engaged in none.").  The Declaratory Judgment Act was intended to allow a party to challenge the constitutionality of a statute without having to violate it and has been extended to allow for a declaration of rights of adverse parties before they accrue avoidable damages. *See Steffel v. Thompson,* 415 U.S. 452, 466 (1974) (discussing origins of Declaratory Judgment Act).  Nothing in the Act or its implementing case law provides for the assertion of a

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 5

wholly redundant counterclaim.

Defendant's Count 2 seeks a declaration of copyright invalidity and unenforceability. ECF No. 36, p. 37 at Counterclaim ¶ 60 (claiming that Plaintiff "has engaged in unlawful speculative invoicing, improperly using its copyright as a weapon against innocent citizens such as defendant" and seeking a declaration that "the '286 registration is unenforceable and invalid and an order to plaintiff to cancel the '286 registration."). Because allegations of copyright misuse at most constitute affirmative defenses and do not constitute claims for relief, Count 2 should be dismissed with prejudice. *See Interscope Records, Inc. v. Kimmel,* Case 3:07-cv-00108-TJM-DEP at p. 9 (N.D.N.Y. June 18, 2007) (a copy of which is attached hereto as Attachment 1). The Court noted as follows: "Assuming that the affirmative defense of copyright misuse is cognizable in this Circuit, it is a defense and not 'a vehicle for affirmative relief.' *Broadcast Music, Inc. v. Hearts/ABC Viacom Entertainment Servs.,* 746 F. Supp. 320, 328 (S.D.N.Y. 1990); *see also Artista Records, Inc. v. Flea World, Inc.,* 356 F. Supp.2d 411, 428 (D. N.J. 2005) ('[C]opyright misuse is not a claim but a defense, and Defendants may not transmute it into an independent claim merely by labeling it one for declaratory judgment.'); [*Metro-Goldwyn-Mayer Studios Inc. v.*] *Grokster, Ltd.,* 269 F. Supp.2d [1213,] 1226 [(C.D. Cal. 2003)]." *See also* 4 Melville V. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.09[A][1][b] n. 1.1 (Matthew Bender rev. ed.) (quoting *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D.N.J. 2005)).

/ / / /

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 6

Count 2 is an amalgam of Counts 2 and 3 of Defendant's first amended answer. In addition to seeking a declaration of copyright invalidity and unenforceability as in Count 2 of his first amended answer, it also seeks cancellation of Plaintiff's copyright as in Count 3 of that document. The combining of these counterclaims does not, however, remedy the defect previously identified by Plaintiff in connection with this counterclaim.

As Plaintiff noted in its previously filed motion to dismiss, ECF No. 20 at p. 11-12, authority for cancellation of a U.S. copyright registration lies exclusively with the Register of Copyrights. 17 U.S.C. § 702. Various federal courts, including the Ninth Circuit, have concluded that the Register of Copyrights has primary jurisdiction over copyright cancellation requests and that such claims may not be adjudicated before the federal courts. *See, e.g., Syntek Semiconductor Co. v. Microchip Tech., Inc.,* 307 F.3d 775, 780-83 (9th Cir. 2002); *Tiseo Architects, Inc. v. SSOE, Inc.,* 431 F. Supp. 2d 735, 740 (E.D. Mi. 2006), and cases cited therein. Under this prudential doctrine, this Court should dismiss Defendant's Count 2 to the extent that he seeks cancellation of Plaintiff's copyright.

    C    Defendant's Counterclaims Do Not Meet the Pleading Standard Established in the *Twombly/Icqbal* Line of Decisions

Like his earlier responsive pleadings, Defendant's second amended answer contains a lengthy narrative and voluminous exhibits. Despite its heft, however, Defendant's second amended answer fails to meet the pleading standard set forth in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and their progeny. These decisions require that Defendant provide "more

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 7

than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.  They require further that Defendant set forth sufficient factual allegations to state a claim for relief that is "plausible on its face." *Iqbal,* 556 U.S. at 677.

Count 1 (seeking a declaration of non-infringement) is simply the mirror image of Plaintiff's claims.  As such, the sole portions of Defendant's narrative that relate to this counterclaim are those which deny liability on Plaintiff's claims.  ECF No. 36 pp. 17-19, Counterclaim ¶¶ 6 - 17.  Of course, the denials in the answer portion of Defendant's second amended answer render these allegations superfluous.  The remainder of Defendant's narrative and its exhibits have no relationship whatsoever to this counterclaim.

Presumably the bulk of Defendant's narrative and its exhibits relate to Count 2, which seeks a declaration of copyright invalidity and unenforceability.[2]  Defendant's hyperbole aside, the allegations in his narrative do not even come close to alleging sufficient facts to render this claim "plausible on its face."

Defendant's narrative consists of fifty-six paragraphs and thirteen exhibits. ECF No. 36 pp. 16-36.  Paragraph 5 states the gravamen of Defendant's position – it asserts that Plaintiff is engaged in some undefined "speculative invoicing program."  At no point in his lengthy narrative does Defendant allege any issuance of invoices by Plaintiff to Defendant or to any other party, nor does he allege what

---

[2] This issue is not free from doubt since Defendant fails to specify which portions of his narrative and exhibits relate to his respective counterclaims.

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 8

Plaintiff has done that is "unlawful." Indeed, rather than alleging any sort of program, Defendant takes Plaintiff to task for the manner in which it has chosen to protect its legal interest in its copyrighted work by pursuing claims of infringement resulting from BitTorrent activity. Defendant cites to legal actions filed by Plaintiff in various districts as if this is indicative of some unlawful or improper conduct by Plaintiff and claims that it should have taken other measures to fight the piracy of its film. ECF No. 36 pp. 26-29,Counterclaim ¶¶ 31-37. He fails to explain, however, why these efforts to protect Plaintiff's legitimate interests are even suspect, let alone unlawful.

      Defendant also alleges that Plaintiff "seeded" its own work to BitTorrent by uploading the work itself. *Id.* pp. 29-33, Counterclaim ¶¶ 38-48.[3] He provides, however, no factual basis for this claim. He argues that because some of the dates of the infringement alleged in various actions precede *Elf-Man's* various release dates, that Plaintiff or its privies necessarily voluntarily made the film available to a BitTorrent site. *Id.* p. 30 at Counterclaim ¶ 39. This allegation, standing alone, does not even approach the *Twombly-Iqbal* standard. Given the complexity of

---

[3] Defendant also posits in passing that some third party seeded *Elf-Man* to BitTorrent as a result of Plaintiff's failure to exercise due care in protecting its property. ECF No. 36 p. 33,Counterclaim ¶ 39, 47. At no point, however, does Defendant explain how this purported lack of due care amounts to the intentional misconduct that Defendant has alleged against Plaintiff.

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 9

making, selling and distributing a feature film and the large number of persons involved in this process, Defendant's claim that Plaintiff or its privies must have seeded *Elf-Man* to BitTorrent at most presents a possible source, but hardly a plausible one. Indeed, it is far more plausible that a third party who had access to the work as a result of the sale, distribution, marketing or promotion of the film acted as the seeder to BitTorrent than to assume that Plaintiff undermined the value of its own copyrighted work and made it available for Internet piracy.

The remaining allegations in Defendant's narrative are simply irrelevant to either of Defendant's counterclaims. Paragraphs 18 - 25 and the related exhibits concern the setting up of Plaintiff and Wiseacre Films, LLC (the film production company operated by Plaintiff's principals) and the copyright registrations for *Elf-Man* and its screenplay. Paragraphs 27 - 29 appear to be designed to call into question whether Plaintiff is the proper party to pursue its claims in this action. Paragraph 27 and the related exhibit reference an action brought by Vision Films, Inc., Plaintiff's sales agent, in the Eastern District of Tennessee alleging infringement of *Elf-Man*. Paragraph 28 states that two of Plaintiff's principals, Ethan Wiley and Richard Jefferies, "may be necessary and indispensable parties." Paragraph 29 contains additional allegations regarding Vision Films, Inc. and also references Anchor Bay Entertainment, the film's distributor. Paragraphs 26 and 30 concern the circumstances and the timing of the release of *Elf-Man.*

None of the foregoing provides an iota of support for Defendant's counterclaims. If Defendant in fact believes that Plaintiff lacks standing to bring this action, it could have filed a motion to dismiss on this ground. Similarly, if

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 10

Defendant in fact believes that there are necessary parties who have not been named in this action, it can file a motion to add any such party.  None of these paragraphs, however, lend any support for Defendant's claim that Plaintiff is engaged in some sort of unlawful invoicing program.

Lastly, Defendant makes various allegations regarding alleged shortcomings in Plaintiff's investigation.  ECF No. 36 pp. 33-36, Counterclaim ¶¶ 49-56.  These allegations amount to nothing more than speculation and, like the remainder of Defendant's narrative, they are insufficient to meet the plausibility standard which applies to Defendant's counterclaims.  Additionally, Defendant claims that Plaintiff's investigators were required to be licensed by the State of Washington and to post a bond under the State's regulatory scheme governing private investigators.  *Id.* at Counterclaim ¶ 52.  As Defendant is well aware, neither Plaintiff nor its investigators conduct business in the State of Washington and neither have any obligations whatsoever under the various regulatory statutes cited in Defendant's second amended answer.  Plaintiff's connection to this jurisdiction stems solely from its out-of-state investigators having identified the infringement of its copyrighted work by persons located within this jurisdiction.  Defendants also claim "upon information and belief" that Plaintiff is undercapitalized.  *Id.* at Counterclaim ¶ 55.  He fails to allege, however, a single fact in support of this claim.

II Defendant's Counterclaims and/or Affirmative Defenses Based Upon Allegations of Fraud Should Be Dismissed or Stricken Pursuant to Fed. R. Civ. P. 9(b).

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 11

To the extent that Defendant's counterclaims and/or affirmative defenses are based upon his allegations that Plaintiff "seeded" its own film by making it available for BitTorrent downloading and/or that it is engaged in some undefined "unlawful speculative invoicing," they are subject to the heightened pleading standard set forth in Federal Rule Civil Procedure 9(b).[4]  Rule 9(b) maintains a heightened pleading standard for claims sounding in fraud to "deter the filing of complaints 'as a pretext for the discovery of unknown wrongs' . . . [by] 'prohibit[ing] plaintiffs from unilaterally imposing upon the court, the parties and

---

[4] Of Defendant's counterclaims, at the very least Count 2, which seeks a declaration of copyright invalidity and unenforceability due to some type of alleged lawful actions by Plaintiff, is based upon allegations of fraud.  Because Defendant fails to specify which of the allegations made in the narrative set forth in his Counterclaims (and incorporated by reference into his Affirmative Defenses) relate to each of his affirmative defenses, Plaintiff can only surmise which of these affirmative defenses are based upon the allegations of fraud.  At the very least, his affirmative defenses set forth in ¶¶ 12 (misuse of copyright), 15 (actions of Plaintiff or privies); 18 (unclean hands), 19 (estoppel), 20 (waiver) and 21 ("Plaintiff's copyright is invalid and unenforceable at equity."),  appear to be so based (*id.* at pp. 14-15).

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 12

society enormous social and economic costs absent some factual basis.'" *In re Stac Elec. Sec. Litigation.,* 89 F.3d 1399, 1405 (9th Cir. 1996) (quoting *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985)). To satisfy Rule 9(b), "the pleader 'must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).

Defendant's counterclaims that sound in fraud must be dismissed for failure to comply with Rule 9(b). Similarly, any of his affirmative defenses which are based on allegations of fraud must be stricken for the same reason. Moreover, claiming the need for discovery to gain particularity violates one of the principal reasons for Rule 9(b) and should not be allowed. *U.S. ex rel. Elms v. Accenture LLP,* 341 Fed. Appx. 869, 873 (4th Cir. 2009).

III    Fed. R. Civ. P. 12(f) Requires that Portions of Defendant's Second Amended Answer Be Stricken.

Fed. R. Civ. P. 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).

The lengthy narrative set forth in Defendant's counterclaims, including numerous unnecessary and immaterial exhibits, is replete with material that should be stricken under Fed. R. Civ. P. 12(f). For the reasons outlined *supra* in addressing Plaintiff's motion to dismiss for failure to state a claim, most if not all

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 13

of the content is immaterial, much of it is redundant and little, if any, has any bearing on the counterclaims set forth after this narrative. If the Court grants Plaintiff's motion to dismiss these counterclaims, the accompanying narrative and exhibits should be stricken on materiality grounds. In the event that the Court denies Plaintiff's motions to dismiss these counterclaims, Defendant should either strike this narrative and its exhibits in their entirety or, in the alternative, order Defendant to re-plead these claims with a narrative which complies with Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") and 8(d)(1) (requiring that "[e]ach allegation must be simple, concise, and direct").

With respect to his affirmative defenses, the following should be stricken on the grounds stated:

-- Paragraph 23 (regarding third party beneficiary status) (ECF No. 36 p. 15) amounts to nothing more than a denial and, as such, does not constitute an affirmative defense. This affirmative defense should also be stricken because it relates to Plaintiff's third claim for relief (indirect infringement), which the Court ordered dismissed in the related action brought by Plaintiff and from which this action was severed. ECF 106 in *Elf-Man, LLC. v. Brown et al.,* U.S. District Court, E.D. Wa. Case No. 13-CV-0115-TOR.

– Paragraphs 24 and 25 (relating to Plaintiff's investigators) should be stricken because Plaintiff's investigators do not fall within the statutory definition of private investigators for the purposes of the state law statutes relied upon by Defendant.

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 14

-- Paragraphs 26 and 27 (relating to admissibility of evidence and of witness testimony) do not constitute affirmative defenses. The issues raised in these paragraphs must be raised later in this proceeding at trial or in motions in limine.

-- Paragraph 28 (authorization to conduct business in Washington) (ECF No. 36 at p. 16) is not a defense and is based upon the incorrect view that a party is required to be "authorized to conduct business in the State of Washington" in order to seek redress before this Court.

-- Paragraphs 2 (failure to add necessary parties), 3 (lack of standing), and 10 (copyright registration certificate) should be stricken because they simply allege defects in Plaintiff's case and such allegations do not constitute affirmative defenses. *See Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002) (citing *In re Rawson Food Service, Inc.,* 846 F.2d 1343, 1349 (11th Cir.1988)).

-- Paragraphs 5 and 14 (ECF No. 36 pp. 14-15) should also be stricken because while fair use may be a proper defense, allegations of that the downloaded material was not sufficiently perceptible or de minimis are not. "[A] taking may not be excused merely because it is insubstantial with respect to the infringing work. . . . '[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" *Harper & Row, Publishers, Inc. v. Nation Enters., Inc.,* 471 U.S. 539, 565, (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.1936)). There is no de minimis (or the like) defense to infringement.

– Paragraph 8 (damages barred under 17 U.S.C. § 504(c)(1)) should be stricken because the Court has already ruled that Defendant's position with respect

to this issue is precluded by the prior severance of this action from the consolidated action referenced in this affirmative defense.

Even Defendant's prayer for relief contains immaterial matter which should be stricken.  These include the following:

Subsection d) – the requested order directing Plaintiff to cancel its copyright registration should not issue under the doctrine of primary jurisdiction;

Subsection f) -- this seeks a damages award, despite the fact that Defendant's sole claims for relief seek only declaratory relief and no monetary damages;

Subsection g) -- this raises issues which should be brought up, if at all, in motions in limine and not in the prayer for relief in Defendant's responsive pleading;

Subsection h) – this seeks an order requiring Plaintiff to post a bond although nothing in the body of Defendant's responsive pleading supports this request -- the sole reference to a legal basis for requiring a bond is contained in Defendant's affirmative defense regarding the State of Washington's regulatory scheme for private investigators, to which Plaintiff and its investigators are not subject;

Subsection i) -- this seeks sanctions "for failure to provide discovery and to conduct a reasonable investigation."  Of course, Defendant's responsive pleading is not the place in which discovery disputes should be raised.  Rather, such issues must be raised in a motion pursuant to Fed. R. Civ. P. 37.  Moreover, Defendant sought sanctions for alleged discovery violations by Plaintiff and the Court denied

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 16

this request at a recent discovery conference. Subsection i) is wholly irrelevant to the issues raised in the body of Defendant's second amended answer.

Subsection i) also seeks sanctions for an alleged inadequate investigation. As Defendant is well aware, Fed. R. Civ. P. 11(c)(2) requires that such relief can only be sought be separate motion (and only when the issues raised in such a motion are ripe).

VI    Conclusion

For the reasons set forth herein, Plaintiff respectfully submits that its motions to dismiss Defendant's counterclaims should be granted and that the dismissals should be with prejudice. Additionally, portions of the remainder of Defendant's second amended answer should be stricken as outlined above.

DATED: March 31, 2014

The VanderMay Law Firm

s/ Maureen C. VanderMay
Maureen C. VanderMay, WSBA No. 16742
Email: elfmanwa@vandermaylawfirm.com
2021 S Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300
Of Attorneys for Plaintiff

PLAINTIFF'S MOTIONS IN RESPONSE TO
DEFENDANT'S SECOND AMENDED ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT; AND
COUNTERCLAIM – Page 17