Maureen C. VanderMay, WSBA No. 16742
The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| ELF-MAN, LLC, | ) | Case No.: 2:13-CV-00395-TOR |
| Plaintiff, | ) | REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTIONS IN RESPONSE TO DEFENDANT'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT; AND COUNTERCLAIM |
| v. | ) | |
| RYAN LAMBERSON, | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant has submitted a memorandum in opposition to Plaintiff's

Motions in Response to Defendant's Second Amended Answer and Affirmative

Defenses to Plaintiff's First Amended Complaint; and Counterclaim.  ECF No. 38.

Given the page limitation set forth in L.R. 7.1(e)(1), this memorandum addresses

only the *Noerr-Pennington* discussion in Defendant's response.  ECF No. 38 at pp.

4-12.

As a threshold matter, in responding to Plaintiff's motion to dismiss under

Fed. R. Civ. P. 12(b)(6) Defendant relies extensively on matters outside of the

pleadings.  *See* Declaration of J. Christopher Lynch in support of Defendant's

responsive memorandum, ECF No. 39.  Because Plaintiff's motion, with limited

exceptions, is to be decided based upon the content of the pleadings, *United States

v. Ritchie,* 342 F.3d 903, 907-908 (9th Cir. 2003), it requests that the Court strike

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 1

or exclude from consideration all such references.  In the event that the Court opts instead to treat Plaintiff's motion as one for summary judgment under Fed. R. Civ. P. 12(d), Plaintiff requests that this motion be re-noted and that it be afforded leave "to present all the material that is pertinent to the motion." *Id.*

Defendant asserts that Plaintiff has cited to no authority which applies *Noerr-Pennington* to claims for declaratory relief under copyright law.  ECF No. 38 at p. 4.  Defendant's narrow view of the doctrine is inconsistent with controlling precedent.  Construing the U.S. Supreme Court's decision in *BE & K Construction Co. v. NLRB,* 536 U.S. 516, 525, 122 S. Ct. 2390, 153 L.Ed.2d 499 (2002), the Ninth Circuit has concluded "that the *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa v. Directv, Inc.,* 437 F.3d 923,930 (9th Cir. 2006).  *See also Kearney v. Foley & Lardner, Llp,* 590 F.3d 638 (9th Cir. 2009) (noting that "[t]he Supreme Court has since held that *Noerr-Pennington* principles 'apply with full force in other statutory contexts' outside antitrust." (quoting  *Sosa,* 437 F.3d at  930)). The *Kearney* Court sets forth a three part test for determining whether *Noerr-Pennington* immunity applies.  This requires that the Court "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity."  590 F.3d at 644 (citing *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 530-33, 535-37,  122 S.Ct. 2390,  153 L.Ed.2d 499 (2002)).

These three requirements are met in the present controversy.  With respect

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 2

to the first prong, *Kearney* explains that the salient question "is not whether the conduct at issue is fraudulent and abusive, but instead whether the success of [the plaintiff's] lawsuit would constitute a burden on petitioning rights." 590 F.3d at 645. Relying on its earlier decision in *Sosa*, the Court stated that "[t]his question of burden is separate from the question of whether the conduct challenged included intentional misrepresentations or fraud." *Id.* Although Defendant's second amended answer employs the euphemism "speculative invoicing program" (ECF No. 36 at pp. 17, 27), Defendant in fact seeks relief against Plaintiff, including the cancellation of its copyright, based upon Plaintiff's having filed copyright infringement actions. Because Defendant seeks to stop Plaintiff from petitioning the federal courts for redress, this first prong is met.

In addressing the second prong, the *Kearney* Court rejected the plaintiff's claim that the conduct of discovery does not constitute protected activity for *Noerr-Pennington* purposes. The Court found that this aspect of litigation was "conduct incidental to the prosecution of the suit." *Id.* at 646. Defendant's allegations against Plaintiff all relate to either the filing of legal actions or conduct incidental thereto, such as the filing of motions for expedited discovery. Like the discovery at issue in *Kearney,* these actions meet the second prong of the *Noerr-Pennington* test. *Id.* at 646.[1]

_____

[1]Relying on dictum, Defendant cites to *Theofel v. Farey-Jones,* 359 F.3d 1066, 1078-79 (9th Cir. 2004), for the proposition that "plaintiff's request for subpoenas without any fact witness to support them is not 'petitioning activity.'"

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 3

With respect to the third prong, the statute under which Defendant is proceeding, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, is susceptible to construction to avoid constitutional difficulties. The Act vests in this Court the discretion to determine whether to hear claims for declaratory relief. This affords the Court a basis upon which to decline to hear Defendant's counterclaims if it concludes that the first two prongs of the *Noerr-Pennington* analysis have been met. *See Sosa,* 437 F.3d at 931 (noting *BE & K's* narrowing construction of the National Labor Relations Act so as to avoid the constitutional issue).

Defendant correctly notes that *Noerr-Pennington* immunity is called off if the so-called sham exception applies. Defendant, however, misunderstands the present procedural posture, stating that "Plaintiff fails to explain how the sham exception to *Noerr-Pennington* does not apply." ECF No. 38 at 7. Defendant thus assumes that this exception applies unless Plaintiff establishes that it does not. As

_____

ECF No. 38 at p. 6. Of course, Defendant's counterclaims do not stem solely from Plaintiff's subpoena to his Internet Service Provider but are based upon its filing of this and other infringement actions. In any event, Defendant mischaracterizes *Theofel.* In that case, the Court did not reach the issue of *Noerr-Pennington*'s applicability to the conduct in question because of the district court's conclusion that the subpoena at issue was baseless and asserted in bad faith. As such, this case presents a straightforward application of the sham exception to *Noerr-Pennington* immunity.

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 4

the *Kearney* Court explained, when the applicability of *Noerr-Pennington* arises in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), then the plaintiff's (or in this instance the counterclaimant's) allegations are assumed to be truth and the sufficiency of that party's pleading must be assessed.  590 F.3d at 647-48.

Even when the factual assertions made in Defendant's counterclaims are assumed to be true, he has not pled sufficient facts to establish that the sham exception to *Noerr-Pennington* applies in this instance.  In the context of judicial proceedings, the Ninth Circuit has identified three bases for the application of the sham exception to *Noerr-Pennington*.  In *Kottle v. Northwest Kidney Centers,* 146 F.3d 1056 (9th Cir. 1998), the Court stated:

> "When the branch of government involved is a court of law, this circuit recognizes three circumstances in which an antitrust defendant's activities might fall into the sham exception.  First, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships.
>
> "Second, if the alleged anticompetitive behavior is the filing of a series of lawsuits, 'the question is not whether any one of them has merit--some may turn out to, just as a matter of chance--but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.'
>
> "Finally, in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.'"

146 F.3d at 1060 (citations omitted).  *See also Kearney, supra,* 590 F.3d at 647 (applying the third prong of *Kottle* outside the antitrust context).

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 5

Defendant's counterclaims do not meet the first prong of this analysis because he has failed to allege sufficient facts to support a claim that Plaintiff's action is objectively baseless, nor that it is a concealed attempt to interfere with the plaintiff's business relationships (or for some other improper purpose). With respect to these issues, the U.S. Supreme Court has stated:

> " First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor,' *Noerr, supra,* 365 U.S., at 144 81 S.Ct., at 533 (emphasis added), through the 'use [of] the governmental process—as opposed to the *outcome* of that process —as an anticompetitive weapon,' *Omni,* 499 U.S., at ----, 111 S.Ct., at 1354 (emphasis in original)."

*Professional Real Estate Investors, Inc v. Columbia Pictures Industries, Inc,* 508 U.S. 49, 60-61, 113 S.Ct. 1920, 123 L.Ed.2d 611, 26 USPQ2d 1641 (1993) (parentheticals in original, footnote omitted).

The Court went on to explain the relationship between the determination of baselessness for the purposes of the sham exception and a determination of probable cause. It stated:

> "The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation. The notion of probable cause, as understood and applied in the common law tort of wrongful civil proceedings, requires the plaintiff to prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose. Probable cause to institute civil proceedings requires no more than a 'reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication' (internal quotation marks omitted). . . .When a court has found that an antitrust defendant claiming *Noerr* immunity had probable cause to

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 6

sue, that finding compels the conclusion that a reasonable litigant in the defendant's position could realistically expect success on the merits of the challenged lawsuit."

508 U.S. at 62-63 (parentheticals in original, footnote and citations omitted).

While Defendant's second amended answer alleges that by engaging in some type of "speculative invoicing program" Plaintiff has an improper motive in pursuing this and other infringement actions, he has not alleged facts sufficient to meet the above-outlined definition of an objectively baseless claim.

Defendant has also failed to allege sufficient facts to support application of the second and third prongs of the *Kottle* analysis.  The second prong applies where the party asserting *Noerr-Pennington* immunity has filed a series of lawsuits "pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival."  146 F.3d at 1060.  Defendant cites to other actions brought by Plaintiff for copyright infringement based upon BitTorrent activity, but cites to nothing to support his claim that these actions have been brought for any purpose other than vindication of Plaintiff's right to be free of infringement of its copyrighted work.  Under the third prong of *Kottle,* the sham exception applies in instances of knowing fraud upon a tribunal which "deprive the litigation of its legitimacy."  *Id.*  Defendant does not allege this in his pleading.

Rather than addressing the content of his pleading, Defendant cites to the following reasons for the application of the sham exception to *Noerr-Pennington*, none of which support this contention:[2]

[2]        Plaintiff submits this response to Defendant's position in the event that the Court declines Plaintiff's request to strike or exclude from consideration

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 7

1)     He argues that "Elf-Man, LLC assigned away its exclusive rights, but it has brought nine lawsuits." ECF No. 38 at p. 9.  Defendant both mischaracterizes the documents upon which he relies and fails to take account of the Ninth Circuit law which affords standing to Plaintiff and not its assignee to pursue this claim.

Plaintiff entered into a sales agency agreement with Vision Films, Inc. ("Vision Films") for the marketing and distribution of *Elf-Man* in May, 2012, a copy of which was filed under seal by Defendant.  ECF No. 40 at Exhibit 1.  Page one of this agreement describes the rights conveyed and, as one would expect, they relate to the distribution and licensing of the film.  In a letter dated February 15, 2013, Plaintiff confirmed that Vision Films is the international sales agent for its film and that it licensed to Vision Films to take certain steps with respect to the illegal accessing of the film.  The agreement authorizes Vision Films "by itself, or in the name of Elf-Man, LLC as required by law" to take action against piracy of the film.  *See id.* at Exhibit 2.

Despite Defendant's claims that Plaintiff conveyed away the exclusive right to seek redress for the infringement of its copyrighted work, the documents he relies upon establish that Plaintiff conveyed the non-exclusive right to enforce its copyright to Vision Films and that it retained said right where proceeding in its own name is required by law.  This arrangement allows both Plaintiff and its sales agent to pursue claims for infringement, depending upon the justiciability requirements of any given jurisdiction throughout the territory covered by the sales agency agreement and during its temporal scope.

Although Defendant has concluded that there is something untoward about

Defendant's reliance on matters that fall outside of the pleadings.

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 8

the fact that both Vision Films and Plaintiff have filed actions in different districts alleging infringement of *Elf-Man,* this is simply the result of the collaborative approach outlined in the documents referenced above.  Indeed, had Plaintiff opted not to proceed with this action and it was instead filed by Vision Films, it is likely that Defendant would be arguing that Vision Films lacked standing under the governing Ninth Circuit precedent.

The recent decision in *Righthaven v. Hoehn,* 716  F.3d 1166 (9th Cir. 2013), requires that Plaintiff (and not its sales agent) pursue this action.  In *Righthaven,* the assignee of rights of a copyright holder filed copyright infringement actions against two defendants.  The Court declined to afford standing to the assignee to pursue these claims.  It noted that "[u]nder the Copyright Act, only the 'legal or beneficial owner of an exclusive right under a copyright' has standing to sue for infringement of that right."  716 F.3d at 1169.  In determining whether exclusive rights have been conveyed by a copyright holder, the Court looked "not just at the labels parties use but also at the substance and effect of the contract."  *Id.*  The Court looked to the allocation of rights between the parties and concluded that despite their intent to vest in the assignee the right to sue for copyright infringement, the assignee lacked standing because it lacked the requisite "exclusive" rights.

In the instant case, Plaintiff conveyed to Vision Films certain rights with respect to the marketing and distribution of its film, including the right to pursue infringement claims either in Vision Films's name or in Plaintiff's name.  Pursuant to this arrangement, Plaintiff commenced this action and has standing as the copyright holder under *Righthaven.*  The fact that Vision Films has filed other

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 9

infringement actions in other jurisdictions with respect to *Elf-Man* is neither surprising nor untoward.  Rather, it stems from both the parties' collaborative approach and the variations or potential variations between circuits with respect to standing to pursue copyright infringement claims.  *See also* accompanying declaration of counsel at p. 5, ¶ 8.

2) Defendant states that "[e]ach lawsuit includes a Motion for Expedited Discovery, but without witnesses to support its claims."  ECF No. 38 at p. 9.  Defendant ignores the fact that in each instance the Court, including this Court in the pending action from which this case was severed, reviewed Plaintiff's motion and made its determination as to whether good cause existed for permitting limited preliminary discovery from various Internet Service Providers.  *See, e.g., Elf-Man, LLC v. Brown et al.,* Case No.13-cv-0115-TOR (E.D. WA), ECF Nos.  5 (Plaintiff's motion), 6 (order granting motion).

3) Defendant claims that "it is clear" that the defendants in various cases were not "observed infringing."  ECF No. 38 at p. 9.  Not only is Defendant attempting to skip trial on the merits in this action and determining the result, he is doing so in various other actions brought by Plaintiff against other defendants.

4) Defendant incorrectly claims that "Elf-Man LLC has refused to produce any explanation of the relationship of its investigator."  *Id.*  This claim is refuted in the accompanying declaration of counsel at p. 2, ¶ 3.

5) Defendant next asserts that "Elf-Man LLC appears entirely uninterested in discovering the source of the infringement or in stopping it at its source."  *Id.*  This claim is cut from whole cloth.  Presumably Defendant makes this assertion based upon Plaintiff's explanation provided through discovery that it cannot

REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTIONS IN RESPONSE
TO DEFENDANT'S SECOND AMENDED
ANSWER – Page 10

identify the original "seeder" of its work.  As the accompanying declaration of counsel explains, this stems from the nature of BitTorrent infringement.  Moreover, once a work has been made available for BitTorrent downloading, "stopping it at its source" does not stop the proliferation of the infringement of the work at issue.  As such, Plaintiff's recourse against the infringing activity lies in asserting claims for infringement against BitTorrent participants.  *See* accompanying declaration of counsel at p. 3, ¶ 4.

6) Defendant incorrectly claims that "Elf-Man, LLC demanded that its fact witness be paid to be deposed."  This is patently false.  *See* accompanying declaration of counsel at pp. 3-4, ¶ 5.

7) Lastly, Defendant claims that Plaintiff has no interest in litigating the infringement cases brought by it.  ECF No. 38 at p. 9.  This, of course, strains credulity when even the record in this action and the related consolidated action are reviewed.  *See* accompanying declaration of counsel at pp. 4-5, ¶ 6-7.

DATED: April 25, 2014.

The VanderMay Law Firm


s/ Maureen C. VanderMay
Maureen C. VanderMay, WSBA No. 16742
Email: elfmanwa@vandermaylawfirm.com
2021 S Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300
Of Attorneys for Plaintiff