# EXHIBIT E

Exhibits to Declaration of Jeffrey Smith
in Support of Defendant's Motion to Compel
Page 28

In response to Request for Production No. 15 of Defendant's First Set of Requests for Production to Plaintiff, the following describes the relationship between Plaintiff and its investigators: Elf-Man, LLC agreed with Vision Films, Inc. (its sales agent for *Elf-Man*) that Vision Films, Inc. would handle its anti-piracy campaign. This arrangement is confirmed in the letter dated February 13, 2013, which we previously produced to your office. Pursuant to this arrangement, Vision Films, Inc., retained APMC, Inc. to arrange for anti-Internet piracy services for various rights holders, including Elf-Man, LLC. Transmitted herewith is a copy of an agreement between Vision Films, Inc. and APMC, Inc. which was executed in April, 2012. As you will see, Schedule A to this agreement lists titles other than *Elf-Man*. In September, 2012, the parties executed another Schedule A which lists, among other titles, *Elf-Man*. I am awaiting further confirmation on this point but it is my understanding that the September, 2012, Schedule A was intended as a substitute for the Schedule A to the April, 2012, agreement and that no new agreement was executed in conjunction with the revised Schedule A.

As I understand it, the parties to the April, 2012, agreement have abandoned the financial terms of their arrangement with respect to *Elf-Man* in various jurisdictions, including but not limited to the State of Washington. The April, 2012, agreement was provided to me with certain financial terms redacted from Schedule B. In light of the parties' agreement to abandon this arrangement with respect to anti-piracy efforts in this jurisdiction, I do not believe that this is an issue of consequence.

APMC, Inc., acting on behalf of Vision Films, Inc. and Elf-Man, LLC, retained Crystal Bay, Inc. to conduct the subject investigation. As I previously explained, there is no written agreement which memorializes this arrangement with Crystal Bay, Inc. No financial terms were agreed to in connection with this investigation because this was considered to be a test case. The investigators were directed to capture IP addresses and record network traffic between the infringer's computer and the source computer.

With respect to Messrs. Patzer and Macek, Mr. Patzer is an outside consultant who acted as the network architect and who designed the system employed by Crystal Bay, Inc. to conduct the subject investigation. Mr. Patzer is responsible for on-going maintenance of the network infrastructure.

Mr. Macek was working for Crystal Bay, Inc. in conducting the subject investigation.

Given your stated concerns about the integrity of the subject investigation, we can arrange for your expert to inspect the software used to conduct the investigation. The software is owned by a company called Excipio. Crystal Bay, Inc. operates this software under a license. Because this software is proprietary, any such test would need to be conducted in a controlled environment.

Exhibits to Declaration of Jeffrey Smith
in Support of Defendant's Motion to Compel
Page 29

ELF CONFIDENTIAL000210

# EXHIBIT F

Exhibits to Declaration of Jeffrey Smith
in Support of Defendant's Motion to Compel
Page 30



601 West Riverside Avenue, Suite 1400
Spokane, WA 99201

Phone | 509.324.9256
Fax | 509.323.8979

April 16, 2014

<u>VIA EMAIL</u>

Maureen VanderMay
The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, NV 89146
elfmanwa@vandermaylawfirm.com

Re:  *Elf-Man, LLC v. Lamberson*, ED WA Case No. 2:13-cv-00395-TOR

Dear Ms. VanderMay:

    Thank you for the explanation regarding the relationship of Elf-Man LLC to the investigators used regarding the allegations against Mr. Lamberson.  We would like you to clarify a few matters, please:

    1.   The financial relationships are important and they are covered by the Court's Order regarding this explanation (plus they are part of the pending interrogatories).  As we have mentioned, IPP/Guardaley have admitted they have an "oral contingency" relationship with Malibu Media, and that relationship is the subject of several co-pending motions to exclude IPP/Guardaley witnesses, including Tobias Freiser, who, according to the Bellwether trail testimony in Pennsylvania, has the same job at Guardaley as Mr. Macek.  You can see these motions to dismiss in the District of Maryland, for example, in Case No. 1:14-cv-00223, pleadings 9 and 10.  The document provided between Vision Films and "APMC, Inc." redacts these financial terms.  We assume from these documents that your firm should have access to the terms, since it appears your firm may have been hired by APMC under Section 1B.  The fact that the "financial terms" have been "abandoned" does not change the terms in place at the time of the engagement, and we are entitled to see those terms and the nature of their abandonment.  So, please supply the redacted portions and of course we will honor the Protective Order as to the specific terms.

    2.   We see your explanation of the links between Elf-Man LLC and its "Principal Investigator" Mr. Macek, but we would ask you please to re-verify their accuracy,

Exhibits to Declaration of Jeffrey Smith
in Support of Defendant's Motion to Compel
Page 31

Spokane  |  Seattle  |  Portland Metro  |  Austin  |  Rochester  |  Washington, D.C.    info@leehayes.com  |  leehayes.com



because the chain does not appear to comport with the facts already known. For example, the explanation provided appears to set the following chain:

    i.    Elf-Man LLC has a Sales Agency Agreement with Vision Films. We apparently have this agreement.

    ii.    Vision Films has an Anti-Internet Piracy Service Agreement ("AIPSA") with APMC. We apparently have this agreement.

    iii.    APMC retained Crystal Bay, Inc. ("CBI") to conduct the investigation. But, no terms are disclosed.

    iv.    CBI hired Mr. Macek, identified in the Initial Disclosures as the "Primary Investigator." But, no terms are disclosed.

    v.    CBI used software designed by Mr. Patzer, and which is now apparently owned by Excipio. But, no terms are disclosed.

We request that the terms of items (iii), (iv), and (v) be provided as the Court has ordered.

3.    The facts that make the chain of the explanation suspicious include the following:

    i.    There is no APMC, Inc. in California. There is an APMC, LLC with the same Sacramento address – but that address is for a law firm, Weintraub Tobin, which occupies the entirety of the 11th floor in the 400 Capitol Mall Building. That law firm denies having any contact information for APMC, LLC or APMC, Inc.

    ii.    We assume that APMC in fact does not have any offices in the U.S. because APMC's signatory for the AIPSA is Patrick Achache, who is the Director of Data Services for Guardaley in Germany. Mr. Achache has signed declarations filed in U.S. Courts stating that he works for Guardaley, and these declarations have been executed in Germany. Patrick Achache's known email address is patrick.achache@guardaley.com. So, it must be that

Exhibits to Declaration of Jeffrey Smith
in Support of Defendant's Motion to Compel
Page 32

Page 2
April 16, 2014



there is some other connection between APMC and Mr. Macek and it must be Guardaley.

    iii.    How could APMC, Inc. "retain" CBI?  As we have explained, CBI is an anonymous "shelf" corporation ostensibly incorporated in South Dakota, but which lists an address that is of a mailbox company that denies having any contact information for CBI when called.  CBI apparently has no offices or employees and was suspended as a corporation in 2013.  CBI's registered agent in South Dakota is another anonymous "shelf" corporation created on the same day as CBI and which also has an address of a mailbox company that denies having any contact information for the agent.  If we were to serve a subpoena to depose CBI as to its "retention" by APMC, whom would we serve?

    iv.    How could APMC retain CBI without any paperwork?  We doubt that there were no financial terms.  Darren Griffin who claims to work for CBI's "technical department" has filed numerous declarations supporting Elf-Man LLC in other cases, and nowhere does he indicate that CBI was doing its investigations voluntarily.  There cannot be "no terms" because there must be some parameters on what APMC asked CBI to "do," even if it was done for "free" (which we doubt, unless in fact CBI was never hired to do anything, which we do not doubt).

    v.    How could CBI of South Dakota hire Mr. Macek of Germany?  Was Mr. Macek a U.S. W-2 employee subject to an immigration visa?  Or did CBI receive authority to do business in Germany and hire Mr. Macek there?  We called the German phone number listed for Mr. Macek in Elf-Man LLC's Initial Disclosures and the woman answering the phone did so by saying "Guardaley."  Are you really saying Mr. Macek was "working for" CBI?  This seems quite unlikely.

    vi.    If Mr. Achache works for Guardaley and he has a company APMC on the side entering into agreements with Vision Films, and the primary investigator Mr. Macek also works for Guardaley, it makes no sense that some shell South Dakota company is somehow in between these two German Guardaley colleagues, Messrs. Achache and Macek.  The fact that Mr. Achache and Mr. Macek work for the same company, Guardaley, and that

Exhibits to Declaration of Jeffrey Smith
in Support of Defendant's Motion to Compel
Page 33

Page 3
April 16, 2014



your explanation does not include Guardaley makes the provided explanation highly suspicious.

The bottom line is that the Court ordered Elf-Man LLC to provide a clear explanation of the financial terms and relationships with the investigators, and this explanation does not achieve that goal.  Mr. Lamberson's pending discovery asks for additional detail about Mr. Macek, and what he saw and how he is being compensated, so your client will have to answer these points.

We ask your client please to re-consider the provided explanation to address our concerns.  Thank you.

Very truly yours,

J. Christopher Lynch
Lee & Hayes, PLLC
601 W. Riverside, Suite 1400
Spokane, WA 99201
509-944-4792
chris@leehayes.com

cc:    Jeff Smith
       Rhett Barney

Exhibits to Declaration of Jeffrey Smith
in Support of Defendant's Motion to Compel
Page 34

Page 4
April 16, 2014