# Exhibit A

## SALES AGREEMENT AGREEMENT

THIS AGREEMENT (the "Agreement") is made and entered into as of May 1st, 2012 by and between VISION FILMS, INC., 14945 Ventura Blvd. Ste. 306, Sherman Oaks, CA 91403, Tel: 818-784-1702, Fax: 818-788-3715, email: sales@visionfilms.net (hereinafter referred to as "Sales Agency" or "Sales Agent"), and

ELF MAN, LLC, 7280 B Wormans Mill Road, Suite 222, Frederick, MD 21708, Attn. Ethan Wiley and Richard Jefferies (hereinafter collectively referred to as "Licensor") with respect to the sales and distribution of certain motion picture(s) (hereinafter "Program(s)") as listed below, subject to the following terms and conditions:

**PROGRAM(S):**     **ELF MAN**
Starring Jason "Wee Man" Acuna

**RIGHTS:**

Licensor grants to Sales Agency the exclusive right for the length of the Term (as defined below) in the Territory (as defined below) to distribute, license, sub-license, lease, rent, promote, advertise, publicize, and to exploit all or part of the Program(s), and to authorize others to do so, by all forms of Cinematic Exhibition, all forms of Television (Free, Cable, Pay, Satellite television, Pay-Per-View, Video-on-Demand and IPTV); all forms of Home Video (Rental, Sell Through, Electronic Sell Through, Commercial Video, DVDs, video cassettes, video discs or any similar devices now known or hereafter invented); all forms of New Media rights now known or hereafter invented (including but not limited to Digital Delivery, Internet, Closed Net, VOD, Near VOD, Subscription VOD, Mobile and Wireless devices); all Ancillary rights such as Hotels, Ships, Airplanes and Installations (including governmental, military installations, embassies, industrial, educational or otherwise); and all similar and related simulcast and retransmission rights; and all forms of publicity and marketing rights relating to the foregoing in any and all languages, including dubbing, voiced over, or subtitling, as such terms are defined in the IFTA International Schedule of Definitions attached hereto as Exhibit "A"..

Page 1 of 15

CONFIDENTIAL ELF000092

**RESERVED RIGHTS:**

Merchandising, soundtrack, and publishing rights shall be reserved by Licensor.

In addition, Licensor shall retain the right to the Direct Marketing of DVDs of the Program during the Term on Licensor's website, or any website maintained for "Elf-Man", or on any website maintained by Jason "Wee Man" Acuna, and any compensation Licensor or its associates derive thereunder shall not be considered part of Gross Receipts defined hereunder.

**SEQUELS, PREQUELS, SPIN-OFFS:**

Provided that Sales Agent is not in material uncured breach of this agreement and further provided that Lise Romanoff continues to be an active owner of Sales Agent (or its licensees, successors and assigns), and further provided Sales Agent secures a Domestic release of the Picture, then Licensor also grants Sales Agent a right of First Negotiation/Last Refusal Right throughout the Term to become the exclusive Sales Agent for each of the Sequels, Prequels, and or Spin-Offs of the Program completed during the Term, as such terms are defined in the IFTA International Schedule of Definitions attached hereto as Exhibit "A". The terms of any subsequent agreement between Licensor and Sales Agent shall be negotiated in good faith. If the criteria set forth above is satisfied, and if the circumstances will not allow for Sales Agent to represent the title, the Licensor and Sales Agent shall negotiate a buy out fee.

**TERRITORY:**    All Territories of the world.

**TERM:**
The Term shall be for Ten (10) years, beginning on April 20th, 2012 ending on April 19th, 2022. In the event that Lise Romanoff is no longer an active owner of Sales Agent (or its licensees, successors and assigns), then Licensor shall have the right to terminate this Agreement subject to the sublicense agreements entered into prior to termination.

Any License Agreements that Sales Agency enters into that extend past the Term (capped at 10 years beyond the expiration of the Term), shall survive for the length of the term in such License Agreement.

**APPROVALS OF SALES:**

Sales Agent and Licensor shall mutually agree on a Domestic sales strategy (i.e. TV premiere versus an all rights deal). Sales Agent shall keep Licensor informed on a bi-monthly basis as to which distributors are pitched, as well as their response. Licensor shall have approval over all of the terms of all Domestic (i.e., the United States and Canada, and their respective territories and possessions and commonwealths) License Agreements.

Regarding International Territories, Licensor and Sales Agency have agreed on a list of pre-approved License Fee Minimums, which is attached hereto as Exhibit "B". For the first 2 years of this Agreement, if the License Fee offered is lower than the pre-approved Minimum, Sales Agency must receive Licensor's approval in writing before entering into such deal. Licensor shall either approve, or suggest a counter offer within 48 hours from its receipt of such offer, and Licensor's approval shall never be unreasonably withheld. After the first two years, Sales Agency may enter into deals lower than the estimates in Exhibit B without Licensor's approval providing that such License Fees are in accordance with current industry standards for each Right licensed in each Territory.

During and after the Term, once the Program is released, Sales Agent shall continue to monitor distributor's reports and collect payments of all royalties due.

**DISTRIBUTION FEES:**

In the Domestic Territories, Sales Agency shall be entitled to receive ▬▬ Percent ▬▬ of all Gross Receipts (as defined below), as its Distribution Fee.

For all Territories outside of Domestic Territories, Sales Agency shall be entitled to receive ▬▬ Percent ▬▬ of all Gross Receipts, as its Distribution Fee, which shall be inclusive of any sub-agent fees, unless otherwise approved in writing. For the sake of clarity, Distributors who buy and resell are not considered sub-agents.

Subject to Licensor's approval over all Domestic License Agreements, it is hereby acknowledged by Sales Agent that Licensor has a special relationship with the following buyers: Paramount, TNT/TBS, and Echo Bridge, therefore it shall assist Sales Agent in opening and closing a deal with such buyer(s), and for its assistance, Sales Agency agrees to reduce its

Distribution Fee to ███████████████████████ Percent with respect to all Gross Receipts derived from such buyers.

**GROSS RECEIPTS:**

For purposes of this Agreement, Gross Receipts ("GR") means all monies payable in connection with the Program received by, or credited to the account of Sales Agent and not subject to return, from any and all sources throughout the world, including, without limitation, revenues paid by distributors as advances, guarantees, license fees, "overages" or any other shares in the revenues generated by the Program. Licensor's share of Gross Receipts shall be defined as Gross Receipts less the Distribution Fee.

**DISBURSEMENT OF GROSS RECEIPTS:**

Gross Receipts shall be disbursed by Sales Agency on a continuing basis as follows:

First, Sales Agency shall take its Distribution Fee as defined herein;

Second, Sales Agency shall recoup its allowable Distribution Expenses as defined herein;

Third, the balance shall be paid to Licensor, or Licensor's Collection Management Account. It is Licensor's sole responsibility to disburse to any of Licensor's partners, assigns or affiliates their appropriate share, as well as any and all sums that may be due to third parties, including without limitation residual payments which may be or become due under any applicable collective bargaining agreement.

**DISTRIBUTION EXPENSES/ RECOUPMENTS:**

All direct and indirect costs of distribution, promotion, marketing and advertising of the Program(s) that are either paid to third parties by Sales Agency or created in-house, including the Initial Promotional, Marketing and Advertising Budget, and the Sales Market Fee ("Distribution Expenses"), shall be recoupable from Licensor's share of Gross Receipts. An itemized breakdown of estimated costs and a pre-approved rate card for in-house promotional work done by Sales Agency is attached as Exhibit "C".

The Initial Promotional, Marketing and Advertising Budget shall be capped at ██████████ unless otherwise approved in writing by Licensor. This shall include but not be limited to the costs of

all Advertising, Printed Promotional Materials such as Key Art, Trailer, Posters and Flyers, Web listings, Screening DVDs, shipping of screeners to prospective buyers, and inclusion on Sales Agency's Trailer reel, Catalog and Website.

After the Initial Promotional, Marketing and Advertising Budget is spent, Sales Agency's Distribution Expenses shall be capped at ▮▮▮▮▮ per calendar quarter on a moving forward basis for the first 5 years, and ▮▮▮▮▮ per calendar quarter thereafter.

The Sales Market Fee is a one-time fee of ▮▮▮▮▮ and shall be recouped by Sales Agency in equal amounts of ▮▮▮▮▮ for the first 4 quarters. Sales Agency shall actively promote the Program in a premiere position for the first 10 markets.

Any other expenses over and above the capped amounts set forth herein shall be subject to Licensor's written approval.

Other pre-approved Distribution Expenses that are not included in the Caps above and shall reoccur throughout the Term shall include but not be limited to:

1) All delivery related expenses of the Program in accordance with the terms of each License Agreement, provided however that Sales Agent shall not be entitled to recoup any costs and/or expenses for Delivery Materials that are provided to Sales Agency by Licensor, and/or paid for by its Licensees. It is hereby agreed that Sales Agency may do some of the Digital work in-house. A pre-approved rate card for in-house post production work done by Sales Agency is attached as Exhibit "C".

Sales Agency shall use its best efforts to cause the Licensees of the Program to pay for the costs of Delivery Materials over and above the negotiated License Fee. It is understood and agreed, that some television clients require delivery elements to be on an "on-loan" basis, in which case, Sales Agency shall get Licensor's prior approval and use its best efforts to retrieve the loaner masters, and/or bicycle them to a future Licensee.

**DELIVERY MATERIALS:**

Licensor will deliver technically satisfactory versions of the following Delivery Materials ("Essential Delivery Materials", and as further defined in the attached Exhibit "D") except where indicated with an asterisk (in which case Licensor will deliver within 14 days of request for such item, or Sales Agency will use good faith efforts to have such item manufactured and recoup

the actual third party cost, or in-house costs listed in the attached Schedule C as a Distribution Expense from Licensor's share of Gross Receipts).

Once Licensor has delivered the Essential Delivery Materials with a satisfactory QC report from a bona fide laboratory, Sales Agency's sublicensees may still request additional fixes at a later date that Licensor shall be obliged to satisfy, but in no event shall Licensor be deemed in breach for such failure to deliver to Sales Agency.

Sales Agent will accept or reject the Essential Delivery Materials within 21 days of Sales Agents receipt of each of the Essential Delivery Materials.

If Licensor fails to delivery the Essential Delivery Materials, and Sales Agent cannot have such item manufactured by a third party or cannot manufacture such item in-house as set forth in Schedule C, then Sales Agent may terminate this Sales Agency Agreement and Licensor shall immediately compensate Sales Agent for all its unrecouped Distribution Expenses, losses of commission form cancelled License Agreements, and any damages or penalties caused by Licensor's failure to provide technically satisfactory Essential Delivery Materials.

**MASTER DELIVERY MATERIALS:**
1) Hard Drive with all uncompressed Video and Sound elements (Apple ProRes-HQ 422, 1920x1080).
2) HDSR master (VIDEO: 1080p, 23.98fps, AUDIO: Stereo 2.0 mix, Stereo 2.0 M&E, 5.1 mix), 16:9 (1.78 or 1.85), with Trailer, DVD Extras and Textless Elements at tail, accompanied by a satisfactory full QC report.
3) * Cross-conversion masters to NTSC 1080/60i and PAL 1080/50i.
4) * Down-conversion masters: DBC NTSC and one DBC PAL with 2.0 Stereo Mix and 2.0 M&E.
5) AIFF audio files: 5.1 Surround Mix, 5.1 M&E, 2.0 Stereo Mix, 2.0 Stereo M&E, and the D, M&E Dialog (Narration and Interviewees, if documentary), Music and Effects tracks full up (not mixed) as separate tracks.
6) Textless Title sequence, End Credits and any other Textless elements on a separate tape or at tail of Feature master.
7) DVD Extras (with M&E if available) along with a list of Extras elements and running times, on a separate tape or at tail of Feature master.
8) Lab access to all Film and Digital Theatrical elements, as available.

**PROMOTIONAL MATERIALS:**
9) Clean and with watermark: "For Screening Purposes" DVD-R, Clean and with watermark Quicktime (H264 encoded .MOV and MPEG4 files), Flash with watermark .FLV (superb quality, no split, audio: 192kbps, 100% volume). Digital files encoded in full size and resized to 853x496.
10) Layered Key Art files (texted and textless) and promotional images (300dpi) in a digital format, as available.
11) Synopsis (1-liner, short and long) in .doc format.
12) Trade reviews, as available in .PDF format.
13) Credit Block, in .doc format.
14) Publicity Restrictions, if any in .doc format.
15) Music Cue Sheet, in .xls format.
16) English Dialogue List (Feature, Trailer, and Extras) in .doc format.
17) Electronic Press Kit *(Sales Agency shall advance up to ▓▓▓▓ at time of delivery to North American Distributor)*

**LEGAL DOCUMENTS:**
18) Copyright Certificate, or Application therefore.
19) Certificate of Origin and full Chain of Title, * including copies of agreements of all key cast and crew that are listed in the Credit Block.
20) * Errors and Omissions insurance (1M/3M $10,000 deductible naming Sales Agency and any of its Licensees as additionally insured) *(Sales Agency shall advance costs of obtaining at time of delivery to North American Distributor)*.

**OTHER:**
21) * Any other materials Sales Agency is required, by the terms of a contract with a third party, as long as same are known as usual delivery items according to industry standards, and are not too cost-prohibitive to create.

**REPORTING:**

Sales Agency shall submit a report and all monies due to Licensor at the end of every calendar quarter throughout the Term (no later than 60 days after each quarter end). The report shall include a summary of all sales made to date and terms of each sale as well as a summary accounting statement of all pre-approved Distribution Expenses. Sales Agency shall also include copies of all fully executed License Agreements for Licensor's reference.

For the first year, only upon written request and only once in between each reporting period, Sales Agency shall advance to Licensor its share of Gross Receipts, reserving enough to cover all projected Distribution Expenses.

**REASONABLE EFFORTS:**

Sales Agency shall at all times use its reasonable efforts to obtain maximum Gross Receipts for the Program on behalf of Licensor. Sales Agency shall attend the following sales markets: NATPE (January), Berlin (February), HK Filmart (March), MIPTV (April), LA Screenings (May), Cannes Film Festival (May), DISCOP (June), LA Screenings (June), Mipcom (October), AFM (November). In addition, Sales Agency shall take sales trips to various territories from time to time throughout the year. The costs for which are included under the Sales Market Fee.

**FOREIGN LANGUAGE TRACKS:**

Sales Agency may have to make, or cause to be made foreign soundtracks for the Program ("Foreign Version") in order to consummate foreign sales. Whenever possible, Sales Agency shall require the Licensee to create the Foreign Version, and shall require that Licensor be granted ownership of such Foreign Version. If Sales Agency must advance the cost of any Foreign Version, it may do so with the prior approval of Licensor, and shall be entitled to recoup its costs as a Distribution Expense from the Licensor's share of Gross Receipts.

**AUDIT RIGHTS:**

Sales Agency will maintain at its principal place of business in Sherman Oaks, California, books and records relative to the distribution of the Program, ie/Gross Receipts, Sales, Expenses, and Credits. Licensor may audit the books and records of Sales Agency, at reasonable times and places (i.e. during normal business hours) after giving Sales Agency prior written notice of its intention to do so. Said audit rights shall not be exercised more than once in any twelve (12) month period, and only with respect to statements received by Licensor within two (2) years prior to the commencement of the audit. If such an audit by Licensor reveals to a discrepancy in Sales Agency's records, which varies by five percent (5%) or more from what was reported by Sales Agency to Licensor, then Sales Agency must bear the actual and verifiable cost of such audit incurred by Licensor and owing to third parties, as well as paying the Licensor the underpayment plus interest.

**REPRESENTATIONS AND WARRANTIES:**

Sales Agent hereby represents and warrants that it has the right to enter into this Agreement and that Sales Agency is neither insolvent, or in the process of filing for bankruptcy.

Licensor hereby represents and warrants:
1. There are no liens outstanding on the Program.

2. Licensor has the right to enter into this Agreement and perform the obligations herein, is the owner of and has the right to grant to Sales Agency the rights granted to Sales Agency hereunder, including without limitation all literary, dramatic rights, that such rights are not encumbered in any way, that Licensor has not granted and will not grant to any third party any of the rights granted to Sales Agency hereunder, that Licensor has not entered into and will not enter into any agreement which is inconsistent with Sales Agency's rights hereunder, that no other person or other entity's consent or release is necessary hereunder for Licensor to enter into this Agreement.

3. Licensor has obtained all necessary licenses and permissions as may be required for the full and unlimited exercise of Sales Agency's rights throughout the Territory for the Term, including, without limitation all rights and permissions required from any record companies and publishing companies to which performers contained in the Program(s) may have contractual arrangements.

4. The Program has been produced in compliance with all applicable guild agreements and laws, statutes, ordinances, rules, regulations, of all governmental agencies and regulatory bodies, as applicable.

5. All obligations with respect to the Program(s) and the production, distribution and exploitation thereof, including but not limited to, all salaries, royalties, license fees, service charges and laboratory charges will be fully paid by Licensor and Sales Agency shall have no responsibility or liability therefore. Sales Agency shall not have any obligation for past, current or future salaries, royalties and residuals.

6. Neither the Program, nor any part thereof (including the sound synchronization thereof), nor the exercise of any rights granted hereunder, nor the exploitation of the Program(s) in the Media, will at any time knowingly violate or infringe upon the trademark, service mark, trade name, copyright, performing,

publicity, patent, literary, intellectual, artistic or dramatic right, the right of privacy, or any other right or privilege of any person or entity or constitute unfair competition against any person or entity.

7.  Sales Agency shall be entitled to quietly and peacefully enjoy and possess, during the entire period of its exclusive Rights under this Agreement, all of the rights granted under this Agreement and agreed to be granted to Sales Agency.

**NAME, IMAGE AND LIKENESS:**

Licensor has secured permission to use the name, voice, image and likeness of all talent (as long as same is not for promotion of a particular consumer product) and is in accordance with the terms and conditions of the respective Agreements with the talent, and directly represents it has the right to license such usage to Sales Agency under the terms hereof, and subject only to limitations of the written requirements submitted (if any) by Licensor to Sales Agency simultaneous with the execution hereof.

**INDEMNIFICATIONS:**

Licensor will, at its own expense, indemnify, save and hold harmless Sales Agency and its successors, Licensees, assigns, agents, representatives and affiliates from and against any and all claims, demands, causes of action, obligations, liability loss, damage, cost and expense (including attorney fees and court costs), incurred or sustained by reason of or arising out of any breach of any of Licensor's warranties, representations or agreements herein made by Licensor, or from any reliance upon any such warranties, representations or agreements. If any person or entity shall make any claims or institute any suit or proceedings alleging any facts, which if true, would constitute a breach by Licensor of any warranty, representation or agreement herein made, Sales Agency shall give prompt written notice of same to Licensor and Licensor shall undertake at its own cost and expense the defense thereof and shall supply competent and experienced counsel to defend any such suit or proceeding. Notwithstanding the foregoing, and without waiving or limiting any rights or remedies that Sales Agency may have against Licensor, or any liability, loss, damage, cost or expense Sales Agency may incur resulting from any such breach, Sales Agency shall have the unfettered right to defend itself from any such claim, suit or proceeding and withhold and deduct said defenses costs and expenses, including reasonable outside attorney's fees, as well as any costs incurred with respect to interference of Sales Agent's business practice, from Licensor's

share of Gross Receipts, but only if Licensor is determined by a Court of Law to actually be in breach of its representations and warranties hereunder. If said amounts deducted are not sufficient to cover all costs related to the same, Sales Agency shall thereafter reserve its full right to be immediately reimbursed by Licensor.

Sales Agent will defend, indemnify and hold Licensor harmless from any claims, damages, suits, losses, liabilities, costs and expenses (including reasonable outside attorney's fees) arising out of or in connection with a breach by Sales Agent of its representations and warranties hereunder.

**ARBITRATION:**

Any dispute arising under this Agreement, including with respect to any right or obligation that survives termination of this Agreement, will be administered and resolved by final and binding arbitration under the IFTA® Rules for International Arbitration in effect as of the Effective Date of this Agreement ("IFTA® Rules"). The IFTA® Rules are available online at the following address: http://www.ifta-online.org. Each Party waives any right to adjudicate any dispute in any other court or forum *except* that a Party may seek interim relief as allowed by the IFTA® Rules. The arbitration will be held in the Forum and under the Governing Law designated in this Agreement, or, if none is designated, as determined by the IFTA® Rules. The arbitration will be decided in accordance with the Governing Law. The Parties will abide by any decision in the arbitration and any court having jurisdiction may enforce it. The Parties submit to the jurisdiction of the courts in the Forum for interim relief, to compel arbitration or to confirm an arbitration award. The Parties agree to accept service of process in accordance with the IFTA® Rules and agree that such service satisfies all requirements to establish personal jurisdiction over the Parties. The Parties waive application of the Hague Convention for Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters with respect to the procedures for service of process. The Prevailing Party in any dispute or arbitration under this Agreement shall be entitled to recover reasonable outside attorney's fees incurred in prosecuting or defending the case. This provision supersedes any contrary provision in the IFTA® Rules.

**NO WAIVER; RIGHTS AND CUMULATIVE REMEDIES:**

No waiver by either Sales Agency or Licensor of any breach hereof by the other in any one instance shall be deemed a waiver

of any prior or subsequent breaches of the same or any other provision hereof. No right or remedy conferred upon Sales Agency in this Agreement or otherwise available at law or in equity (or both) shall be exclusive of any other right or remedy contained in this Agreement or otherwise made available. All such rights and remedies shall be cumulative.

**NOTICES:** All notices shall be sent by facsimile copy or delivered by hand to the other party at the addresses listed below, and shall be deemed received on the date sent by facsimile copy or on the date delivered by hand.

Sales Agency:    VISION FILMS, INC.
                 14945 Ventura Blvd. Ste. 306
                 Sherman Oaks, CA  91403
                 Fax:  818 788 3715, Phone: 818 784 1702
                 Email: sales@visionfilms.net

Licensor:        Elf-Man, LLC
                 7280 B Wormans Mill Road, Suite 222
                 Frederick, MD 21708
                 Attn: Ethan Wiley & Richard Jefferies
                 Email: ethanwiley@wiseacrefilms.com
                 And richardjefferies@wiseacrefilms.com

With copy to:    Michael E. Morales
                 Attorney At Law
                 10880 Wilshire Boulevard, Suite 2070
                 Los Angeles, CA 90024
                 Fax: 310-470-0044
                 Email: Michael@entatty.com

**ENTIRE AGREEMENT:**

This Agreement represents the entire understanding and agreement of the parties with respect to the subject matter hereof and can only be amended by a writing signed by the parties hereto.

**SEVERABILITY:**

If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal or unenforceable, such provisions will be severable from the rest of this Agreement and the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

CONFIDENTIAL ELF000103

**BANKRUPTCY:**

In the event Sales Agency becomes insolvent or files for Bankruptcy, Licensor shall have the right to terminate this Agreement immediately by sending written notice of such termination, whereupon both party's obligations hereunder shall cease, and all rights granted hereunder shall immediately revert to Licensor, and all materials delivered hereunder shall be returned to Licensor. In addition to any other rights and remedies available hereunder, if this Agreement is assumed in the course of the Sales Agency's bankruptcy case by a trustee or debtor-in-possession pursuant to Section 365 of the Bankruptcy Code, Licensor shall be entitled to recover as a part of the default to be cured by such trustee or debtor-in-possession any monies it is due prior to such Sales Agency filing of a petition under the Bankruptcy Code.

**ASSIGNMENT:**

Sales Agency may not assign any of its rights and/or obligations under this Agreement without the prior written consent of Licensor but the Sales Agency may engage a sub-agent without Licensor's prior written consent as long as the commission for such sub-agent are borne solely by the Sales Agency. Licensor may assign its rights and/or obligations without Sales Agent's permission if to: (i) a person or entity which Licensor merges or is consolidated, (ii) person or entity which acquires a substantial portion of Licensor's assets; or (iii) a person or entity which is controlled by or under common control with, or controls the Licensor.

**APPLICABLE LAW:**

This Agreement and the rights and obligations of the parties hereto will be governed by and construed and enforced in accordance with the internal laws of the State of California without giving effect to its conflict of law principals.

**SURVIVAL OF REPRESENTATIONS AND WARRANTIES:**

The indemnities, representations and warranties contained herein and in any documents delivered pursuant to this Agreement will survive the date of execution of this Agreement and will continue until the full and final payment and performance of all obligations under this Agreement

CONFIDENTIAL ELF000104

**FINAL AGREEMENT:**

This Agreement shall constitute our final understanding of the terms of our relationship with respect to the Program(s) and shall supersede all prior written and oral negotiations.

**OTHER:**

1. Sales Agency shall neither edit the Program nor authorize its Licensees to edit or alter the content of the Program without Licensor's prior written consent, except to meet broadcast timing and satisfy censorship requirements.

2. Licensor shall have approval over all Trailers and Key Art campaigns created by Sales Agent.

3. Upon termination/expiration of this Agreement, all Delivery Materials delivered hereunder must be returned to Licensor including any Artwork, Trailers or other Delivery Materials created by Sales Agency.

4. If Sales Agency licenses the Program to a distributor in an agreement with other films ("Package"), the License Fee allocated to the Program shall be on the basis of a reasonable allocation of revenue in light of the commercial value of the programs in the Package, and the license fee for the other Programs in the Package shall be disclosed to Licensor.

("Licensor")
Signature: _[signed]_
Name: ETHAN J. WILEY
Title: behalf of CO-MANAGER, ELF-MAN, LLC
Date: 5-1-12
Tax ID # 36-4714030

**VISION FILMS, INC.**
("Sales Agency")
Signature: _[signed]_
Name: Lise Romanoff
Title: Managing Director/CEO
Date: July 26th 2012

**SCHEDULE C: Parts 1 and 2**

Part 1 – Initial Promotional Budget – Cannes Film Festival/LA Screenings/DISCOP

1. ███ – design and printing of key art, flyers and inclusion in VF catalog, and design of various web-pitches
2. ███ – various posters at sales markets
3. ███ – on line screening room of film and trailer, DVD trailers reels, inclusion on Apple TV, ipad, etc.
4. ███ – design and placements of various advertisements in trades
5. ███ – trailer

Part 2 – VF In-House Rates attached